(74 App. Div. 320.)

### TAYLOR v. THOMPSON et al.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

**1. PARTNERSHIP—INDIVIDUAL REPRESENTATIONS TO PURCHASER—LIABILITY.**
> A partner, to induce plaintiff to join him in buying out the old firm,
> made false representations as to its assets. The other partners did not
> know of such representations, but merely offered to sell to him and any
> other whom he could get as an associate. Plaintiff, after discovering
> that such representations were false, made no offer to rescind, and
> gave no notice to the other partners of the fraud. Two years later the
> new partnership was dissolved, and its claims, etc., assigned to plaintiff,
> after which he brought this action for deceit. *Held*, that as the partner
> negotiating the sale was not acting as the agent of his former partners
> in inducing plaintiff to buy them out, but merely on his own behalf,
> the old partnership was not liable for such misrepresentations.

> O'Brien and Hatch, JJ., dissenting.

Appeal from trial term, New York county.

Action by William A. Taylor against Robert H. Thompson and
others. From a judgment for defendants, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-
LIN, O'BRIEN, and INGRAHAM, JJ.

Austen G. Fox, for appellant.
John J. Crawford, for respondents.

INGRAHAM, J. When this case was before this court on the
former appeal, two members of the court were of the opinion that
the action could be maintained; one thought it could not; while two
concurred in the result, reversing the judgment upon the ground of
an error in the charge. 70 N. Y. Supp. 997. The question of the
right of the plaintiff to maintain the action, therefore, was not de-
termined, and is now before us. The facts in this case are somewhat
peculiar. Prior to the year 1889 the firm of Culbert, Taylor & Co.
was engaged in the business of importing and selling wines, liquors,
and spirits in the city of New York. This firm was composed of the
defendants. In the summer of 1889 a bookkeeper of this firm was
discovered to have been a defaulter, having appropriated about $30,000
belonging to the firm. After this defalcation it appeared that the
members of the firm, other than Culbert, desired to withdraw from
the business; and the position taken by them seems to have been
that, if the firm was to go on, Culbert would have to go out, as they
were not willing to go on in business with him. Culbert then applied
to a friend (Mr. Bonner), stating that as a result of the situation he
would be forced out of business unless he could get capital to go on,

and if he could get capital it would be a good business. As a result of this conversation, Bonner gave the plaintiff a letter of introduction to Culbert. The plaintiff called on Culbert, and said that he had called down to see what he had to say with reference to the business which he said could be purchased. After some conversation about the business, the plaintiff asked Culbert to make a statement of the business in writing, and just before October 1, 1889, Culbert delivered to the plaintiff a paper which he (Culbert) said was a statement he had made of the condition of the affairs of the business. This statement shows liabilities of upwards of $88,000, with assets of over $118,000. After this statement was received, Culbert stated to the plaintiff that he (Culbert) had calculated the net cost of the goods, and that he was the only one who did know the net cost; that the accounts receivable were as good as gold; that the business could be bought by assuming the obligations to foreign creditors and discharging the other outstanding obligations of the firm, in consideration of which the purchaser would receive the stock and the accounts receivable; and that the matter had to be closed within a few days. The plaintiff then employed an accountant to go over the books of the firm and verify this statement. This accountant presented to the plaintiff a statement which differed from the statement that Culbert had made. Instead of showing a surplus of $30,000, it showed a deficit of about the same amount. When this statement of the accountant was shown to Culbert, he said that he knew where the trouble was, and that he would see the accountant and show him where he had made the error. The plaintiff gave this paper to Culbert, and Culbert then took the accountant down to the firm office, when the accountant made another examination of the books. As the result of the second examination, the accountant presented another statement to the plaintiff, which was substantially the same as that Culbert had presented, showing an excess of assets of upwards of $29,000. The plaintiff further testified that, after the presentation of the second statement, he said to Culbert that he had no confidence in the accountant; that, if he went into it, he should do it entirely relying upon Culbert's statement. "If you tell me that the statement you made is a correct one, and that the goods and accounts as you represent them are as this paper shows, I shall go in the business with you." Culbert stated, "You can rest assured those are absolutely correct;" "and therefore," plaintiff testified, "I told Mr. Culbert that I would supply the money to go on." The plaintiff further testified that at this first interview with Culbert the latter stated that his partners were willing to sell out the business if he (Culbert) could find a man who would buy it, and that if the plaintiff would come in and take charge of the office business, and watch, and he were allowed to go out on the road, his branch of the business would be a good business. It was after these interviews that the plaintiff determined to become a partner with Culbert, and take over this business, which they together were to carry on. Subsequently the plaintiff and Culbert executed copartnership articles, dated October 4, 1889, which were to continue for five years. This agreement recited that the copartners had contributed the sum of $77,000 in equal pro-

portions. Subsequent to the execution of this agreement, and on the same day, Mr. Bonner, who had introduced the plaintiff to Culbert, advanced to the firm the $77,000, and some time after obtained a note of the firm for that amount. On the 4th of October the parties met at the office of Sullivan & Cromwell, who were the attorneys for the old firm, and the new firm was represented by an attorney employed by plaintiff at Culbert's request. The new copartnership, composed of Culbert & Taylor, then delivered to the old firm a check payable to the order of the old firm for $26,000, and at the same time an agreement was signed by which the members of the old firm, "as members of the firm of Thompson, Culbert & Company," as parties of the first part, in consideration of the sum of $26,000, granted, bargained, sold, assigned, and conveyed to Robert B. Culbert and William A. Taylor, the parties of the second part, "all the property, assets, choses in action, and good will of the firm of Thompson, Culbert & Company, together with all stock on hand at their place of business, No. 39 Broadway, and stock in bond or in transit, together with all books of account, bills receivable, machinery, and appurtenances of every kind and nature"; and the parties of the second part assumed and agreed to pay all the debts of the parties of the first part, together with the expenses and liabilities for salaries, etc. This check for $26,000 was used to repay to the members of the old firm, except Culbert, the capital that they had invested in the business. At the same time the new firm also delivered a check, to the order of Thompson & Morris, for $41,520.75, which check was used to pay off certain obligations of the old firm upon which the members thereof were liable. At the same time a check for $10,000 was drawn by Culbert & Taylor to the order of the National Bank of the Republic, which was used to pay the notes of the old firm that were held by that bank.

Although this agreement was in form a transfer of the business from one copartnership to another, the substantial effect was that these defendants, other than Culbert, transferred their interest in this business to Culbert & Taylor; Culbert being a member of both firms; the defendants, other than Culbert, receiving the amount of the capital that they had invested in the business; Culbert & Taylor assuming and paying the obligations of the old firm. There is no dispute but that the plaintiff understood the situation that Culbert was in in relation to the transaction. In inducing the plaintiff to advance the money to carry out this arrangement, Culbert was acting in his own interest. In the new firm he was in receipt of a much larger interest than in the old firm, and his statement to the plaintiff was that his old partners were willing to sell out the business if Culbert would find a man who would buy it; and after that statement the plaintiff determined to become a partner with Culbert, and go on with the business with him. Culbert in his transaction was thus acting on his own behalf to induce the plaintiff to purchase out his old partners, so that he and the plaintiff could acquire the property of the old firm, and together, as copartners, transact the business which had before been transacted by it; and, in considering the representations made by Culbert to the plaintiff, it seems to

me that Culbert's relation to the whole transaction must be kept clearly in mind. To induce the plaintiff to enter into this copartnership, Culbert made certain representations as to the book accounts, and as to the net cost to the old firm of the stock of goods on hand; and it was claimed by the plaintiff, and there was testimony tending to show, that some of these representations were false. There is no evidence tending to show that these defendants, other than Culbert, had any knowledge that Culbert made any representations as to the business, or that they ever authorized him to sell the business for them. They offered to sell to him and any one that he would associate in business with him, and the only ground upon which it is sought to hold these defendants is that, as Culbert was their partner, they were responsible for his false representations.

It is undoubtedly the general rule that one partner representing the firm is an agent for the other partners, and in the transaction of the firm business they are responsible for his representations, as a principal is responsible for an agent's representations made in the course of his agency, and within his authority, express or implied; and we may assume that if this copartnership had sold its business to third parties, and Culbert, to induce these third parties to purchase the business, had made false and fraudulent representations, his copartners would have been responsible to any one dealing with the firm and relying upon Culbert's representations. But the crucial fact in this case is that, in his dealings with the plaintiff, Culbert was not representing the firm. He was representing himself in inducing the plaintiff to furnish money to purchase the interest of his former partners in the business for his own and the plaintiff's benefit; and this relation of Culbert to the transaction was known to the plaintiff, for the basis upon which the transaction was carried out was that Culbert and the plaintiff should purchase the business, and should succeed to the interest of his former copartners. The fact that Culbert was a member of the old firm was a mere incident that could not affect the substantial position of the parties to the transaction. Culbert was not a seller of the business. He was a purchaser of the interest of his partners. He acted in the transaction not as representing them, but as representing himself for his own advantage; and to say that, in regard to this purchase, Culbert either represented his copartners, or acted as an agent for them in the transaction, to my mind, reverses the situation. Culbert sold nothing; he transferred nothing; represented no one but himself; and when the plaintiff became Culbert's partner, and purchased an interest in the business, he was acting with Culbert in purchasing from Culbert's former partners their interest in this business; and Culbert's representations, as a part of the transaction by which he and another purchased from this old firm its business, were representations which he made, not to induce a third person to buy the property of the firm, but to induce a third person to join with him in purchasing the property of the firm. That the defendants had expressed their willingness to transfer their interest in this firm to the new firm, if Culbert should procure a person to take their place, did not make Culbert their agent in that transaction, because

it was understood that Culbert was acting on his own behalf in procuring the plaintiff to make this purchase, and not on behalf of the other defendants. When the plaintiff and Culbert were acting together in the purchase of the property of the old firm, so that Culbert and plaintiff should buy out the other partners, Culbert was not engaged in the firm business. On the contrary, what was intended was a dissolution of the copartnership relations between Culbert and his partners; and in regard to such a dissolution the parties were acting not as copartners, but individually and antagonistically, and as between these other defendants and Culbert, in Culbert's purchasing the firm business, Culbert was acting not as a representative of his copartners, but antagonistic to them. The plaintiff in October, 1889, within a few weeks of the transaction, discovered facts from which the inference could be drawn that Culbert had made a misstatement as to the amount due by the firm. He made no offer to rescind the transaction, gave these defendants no notice of the fraud, but continued on in business with Culbert until 1892. In 1890 he discovered that the representations as to the stock were false. He gave no notice of these misrepresentations to the defendants, made no offer to rescind the agreement, but continued for over two years in business with Culbert. He is still engaged in conducting this business, which has been a profitable one since he took possession of it; and, so far as appears, the first claim that he made against the defendants was when this action was commenced in January, 1893. The plaintiff, thus having got all the advantage of this transaction, and still holding on to the business which he then acquired, and which has been a profitable one, seeks to recover from these defendants the damages that he sustained by reason of Culbert's misrepresentations to induce him to become Culbert's partner. The form of action is for damages for deceit, but the transaction involved a sale to the new firm, and it was the new firm that sustained damage, not this plaintiff. The plaintiff recognized this, for in his complaint he alleges that the firm of Culbert & Taylor was dissolved, and Culbert assigned, transferred, and set over for a valuable consideration to the plaintiff all his (Culbert's) right, title, and interest in and to any claim or demand against the defendants, or any of them, arising out of this transaction. The plaintiff therefore sues these defendants as assignee of Culbert, and seeks to recover damages from these defendants, as Culbert's assignee, because of false and fraudulent representations made by Culbert. This is the first time, to my knowledge, where one partner has endeavored to hold his copartners liable for the damages sustained by him in consequence of his own false and fraudulent representations. The plaintiff, claiming through the firm of Culbert & Taylor, of which Culbert was a member, seeks to hold these third parties liable for Culbert's fraud, when they had no knowledge of or relation to the fraud, never authorized it, and were entirely innocent of it. It would seem that the mere statement of this proposition shows conclusively that Culbert, in inducing the plaintiff to join him in purchasing the defendants' interest in this business, was not acting as their agent.

It follows that the judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur. O'BRIEN and HATCH, JJ., dissent.